**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  07-21798-CIV-HUCK/SIMONTON**

PARASRAM RAMBARRAN,

       Plaintiff,

v.

BANK OF AMERICA CORPORATION,

      Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION**
**TO DISMISS COMPLAINT AND TO STRIKE DAMAGES**

THIS CAUSE is before the Court on Defendant Bank of America Corporation's Motion to Dismiss the Pro Se Complaint and to Strike Plaintiff's request for punitive and lost profits damages, filed on August 20, 2007 (D.E. #5).  In its Motion, Defendant argues that Counts I, II, and III of Plaintiff's Complaint should be dismissed because the law does not recognize a civil cause of action for violation of 15 U.S.C. § 1681s-2(a).  Defendant also argues that Count IV should be dismissed because Plaintiff has failed to file his claim within the applicable two-year statute of limitations. Further, Defendant moves to strike Plaintiff's request for punitive and lost profits damages, contending they are not available in this action.  For the reasons set forth below, Defendant's Motion is GRANTED IN PART AND DENIED IN PART.

## I.  PROCEDURAL AND FACTUAL BACKGROUND[1]

Sometime in July 1998 Plaintiff obtained a car loan from Defendant.[2]  Plaintiff made all of the required payments and thus paid the loan in full.  After making the final payment, Plaintiff began receiving phone calls from Defendant alleging that Plaintiff's loan was not paid in full, and that Plaintiff owed Defendant an outstanding balance.  Plaintiff repeatedly disputed that he was indebted to Defendant.  On October 3, 2000 Defendant sent Plaintiff a letter advising him that he was in default and demanding payment of $125.25, in addition to other charges.  Plaintiff submitted a check in the amount of $125.25 to Defendant, which was cashed on October 20, 2000.

Plaintiff subsequently continued to receive calls from Defendant advising him of his outstanding balance, and Plaintiff continued to inform Defendant that he had already paid his loan in full.  On September 17, 2001 Defendant sent Plaintiff a letter indicating that the loan was paid in full and that credit reporting agencies would be so notified.

Thereafter, Plaintiff applied for various forms of credit on numerous occasions without success.  At least some of these applications were to Defendant.  On one such occasion, in November 2004, one of Defendant's employees advised Plaintiff that his credit applications were denied because of a "charged off" account that appeared on his credit report.  Plaintiff made multiple attempts over the ensuing months to obtain information regarding this account, but to no avail.  During this time Plaintiff attempted to take advantage of several opportunities, such as obtaining business credit and

---

[1] This factual background is derived from Plaintiff's Complaint, as the factual allegations in a complaint must be taken as true when reviewing a motion to dismiss.

[2] Plaintiff originally obtained this loan from Barnett Bank, which was purchased by Nations Bank.  Defendant Bank of America later acquired Nations Bank.  The Court will refer to "Defendant," meaning Bank of America, for the remainder of this Order.

purchasing land and property, and experienced difficulties due to his credit report.  In June 2005 Plaintiff learned that the "charged off" account was in fact the car loan with Defendant, which Defendant continued to consider unpaid in full.  Around this time Plaintiff obtained a copy of his credit report, which reflected that Defendant had "charged off" a debt from Plaintiff in the amount of $2,176.  On June 7, 2005 Defendant wrote Plaintiff a letter stating that his loan was in fact paid in full as of October 20, 2000, and that Defendant would advise credit reporting agencies of this fact.

Construing the allegations in the Complaint in a light most favorable to Plaintiff, as the Court must in ruling on a motion to dismiss, Plaintiff's credit report still indicated his car loan with Defendant was "charged off" even after Defendant's June 7, 2005 letter.   This is supported by Plaintiff's allegation that he wrote letters to the credit reporting agencies Experian, Equifax, and Trans Union on February 7, 2006 "seeking verification about a charged off account" on his credit report.  Experian responded with a letter dated February 17, 2006 and a copy of Plaintiff's credit report as of that date, which still reflected that Defendant had "charged off" $202 of Plaintiff's car loan.  Experian's letter directed Plaintiff to contact Defendant if he questioned the results of Experian's investigation, which apparently confirmed that Plaintiff's account with Defendant was indeed "charged off."  Upon receipt of this letter, on February 24, 2006, Plaintiff placed a call to Experian and left a message in which he disputed the "charged off" account.  Plaintiff also sent a letter to Experian asking for more information related to the "charged off" account and informing Experian that the loan was paid in full.[3]  Experian later sent Plaintiff another copy of his credit report, this one dated March 10, 2006, which  incorrectly labeled Plaintiff's account with Defendant "paid closed/account charged off $125 written off."

---

[3] Plaintiff does not specify the date on which he sent this letter.

When Plaintiff did not receive responses to his February 7, 2006 letter from Equifax and Trans Union, he sent follow-up letters on March 1, 2006. Both agencies responded by letter on March 8, 2006 acknowledging Plaintiff's dispute concerning the "charged off" account with Defendant. In its letter, Equifax confirmed that it had checked with Defendant regarding the disputed account, and that Defendant confirmed the account was correctly reported as delinquent and charged off. Trans Union's letter acknowledged Plaintiff's dispute, advised that it had completed its investigation, and attached a copy of Plaintiff's credit report dated March 8, 2006 incorrectly labeling the account in question "payment after charge off/collection."

Plaintiff wrote Defendant a letter dated March 14, 2006 disputing the status of his account as reflected in his credit reports, to which Defendant did not respond. On May 1, 2006 Plaintiff received two calls from employees of Defendant demanding payment on the disputed account, in the amounts of $183.83 and $125.25 respectively. Plaintiff disputed that he owed these amounts. Plaintiff wrote Defendant another letter on May 2, 2006 requesting a response to his March 14, 2006 letter. Defendant responded with two letters dated May 25, 2006 stating that the disputed account was paid in full as of October 2000, and that it had asked Experian, Equifax, and Trans Union to update Plaintiff's file to reflect the disputed account status as "Paid in full/current." Plaintiff received another letter from Defendant on June 2, 2006 advising that the disputed account was paid in full. Prior to the receipt of these letters Plaintiff repeatedly asked Defendant to provide documentation related to the disputed account, but never received a response.

Plaintiff subsequently filed this suit on July 12, 2007, naming Bank of America as the defendant and seeking to recover under various provisions of the Fair Credit Reporting Act ("FCRA"). On August 20, 2007, Defendant filed a motion to dismiss the Complaint, which is now

fully briefed and ripe for resolution.

## II.  MOTION TO DISMISS STANDARD

In reviewing a motion to dismiss, all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts must be taken as true.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994).  Federal Rule of Civil Procedure 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 335 U.S. 41, 47 (1957)).  Nonetheless, when on the basis of a dispositive issue of law no construction of the factual allegations will support the cause of action, dismissal of the complaint is appropriate.  *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III.  ANALYSIS

### A.    Counts I, II, and III

In Count I of his Complaint, Plaintiff seeks to recover for Defendant's "breach of duty to provide accurate information."  In Count II, Plaintiff seeks to recover for Defendant's "failure to provide consumer with mandatory notice."  In Count III, Plaintiff seeks to recover for Defendant's "failure to provide consumer with mandatory notice within 30 days of reporting negative information to consumer reporting agencies."  Plaintiff invokes the FCRA for all three counts, but does not specify which portion of that Act.  Based on Plaintiff's Response in support of his Complaint, however, it appears he sought to invoke 15 U.S.C. § 1681s-2(a).  *See* Pl.'s Resp. at 2-3.

Defendant has moved to dismiss Counts I, II, and III, correctly arguing that no private right

of action exists under that provision of the FCRA.  *See* 15 U.S.C. § 1681s-2(c)-(d) (specifying that section 1681s-2(a) shall be enforced "exclusively" by certain governmental agencies and officials); *see also, e.g.*, *Allen v. Am. Exp. Co.*, No. 07-60338-CIV, 2007 WL 2113622, at *2 (S.D. Fla. July 23, 2007) ("a private consumer does not have a cause of action against a furnisher [of credit information] for violation of § 1681s-2(a)"); *Agostinho v. Capital One Servs., Inc.*, No. 07-20674-CIV, 2007 WL 2113602, at *2 (S.D. Fla. July 23, 2007) (same).  Plaintiff also conceded as much in his Response.  *See* Pl.'s Resp. at 2.  Thus, Counts I, II, and III are dismissed.

**B.   Cou**<sup>nt IV</sup>

In Count IV of his Complaint, Plaintiff seeks to recover for Defendant's "failure to promptly investigate after receiving notice of dispute" pursuant to section 1681s-2(b).[4]  For this provision of the FCRA, Plaintiff does have a private right of action.  *See* 15 U.S.C. § 1681n-o, s-2(c)-(d).

According to section 1681i(a)(1)-(2)(A), when a consumer reporting agency receives notice from a consumer that she is disputing any item of information contained in her file at the agency, the agency must notify the furnisher of the disputed information within five days.  According to section 1681s-2(b) in conjunction with section 1681i(a)(2), when the furnisher of the information receives such notice from a consumer reporting agency, the furnisher has thirty days within which to take a number of required actions.  These actions include conducting an investigation into the dispute and modifying the information furnished to the credit reporting agency if the investigation turns up inaccuracies.

---

[4] Although Plaintiff did not specifically allege violation of section 1681s-2(b) in his Complaint, it is clear from Plaintiff's Response in support of his Complaint that he intended Count IV to invoke that provision.  *See* Pl.'s Resp. at 2.  Therefore, the Court finds that Count IV alleges violation of section 1681s-2(b).

Here, Plaintiff contends that when Defendant learned from a credit reporting agency that Plaintiff was disputing information provided by Defendant, Defendant failed to discharge its duties under section 1681s-2(b) by conducting "all investigations, reviews, and reports within 30 days of receipt of notice of dispute." Compl. at ¶ 78.

Defendant seeks to dismiss this claim based on the applicable statute of limitations as laid out in section 1681p. Under that section, actions brought to enforce any liability under section 1681 may be brought within the earlier of "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." According to Defendant, Plaintiff "discovered the alleged violation that forms the basis for all his claims against [Defendant] during November of 2004." Def.'s Mot. to Dismiss at 6. Because Plaintiff did not file his Complaint until July 12, 2007, Defendant contends, Plaintiff's claim is time-barred. *Id.* at 6-7.

Construing the allegations in the Complaint in a light most favorable to Plaintiff, the Court finds that Count IV is not time-barred by the applicable statute of limitations. As explained above, when the furnisher of information to a credit reporting agency receives notice from the agency that such information is the subject of a consumer's dispute, that furnisher breaches section 1681s-2(b) unless it conducts an investigation within thirty days. Further, when two years have elapsed after the consumer learns of this breach, that consumer may no longer bring a FCRA claim against the furnisher of the disputed information. *See* 15 U.S.C. § 1681p. Here, Plaintiff alleges that he did not dispute Defendant's "charged off" account with any credit reporting agency until he sent a letter to Experian, Trans Union, and Equifax on February 7, 2006. *See* Compl. at ¶ 36. The first company to respond to Plaintiff's letter was Experian, which sent Plaintiff a letter dated February 17, 2006.

7

*See id.* at ¶ 38.  It appears from the content of this letter that Experian conducted an "investigation" into the disputed account.  *See id.*  However, it is not clear from the Complaint whether Experian had notified Defendant that Plaintiff disputed the information Defendant provided regarding the "charged off" account.

Plaintiff sent follow-up letters to Equifax and Trans Union on March 1, 2006, and both companies responded by letter on March 8, 2006 acknowledging Plaintiff's dispute.  *See id.* at ¶ 37.  Equifax's letter indicated it had contacted Defendant regarding Plaintiff's dispute.  *See id.* at ¶ 40.  Plaintiff also alleges later in his Complaint that Defendant was advised "[s]ometime prior to March 8, 2006 . . . by credit reporting agency Equifax that Plaintiff was disputing the alleged defaulted loan."  *Id.* at ¶ 77.

Thus, it appears from the Complaint that Defendant first received notice of Plaintiff's dispute from Equifax (and possibly also from Experian) sometime after February 7, 2006 but before March 8, 2006.  Upon such notice, Defendant had thirty days to begin its investigation before being in breach of section 1681s-2(b).  Even if Defendant received notice at the earliest possible date, February 7, 2006, its failure to investigate would result in a breach of that section upon the lapse of thirty days, on March 9, 2006.  Plaintiff filed his Complaint on July 12, 2007 (D.E. #1).  Thus, even if Plaintiff learned of Defendant's breach on the earliest possible day, March 9, 2006, he would still not run afoul of the two-year statute of limitations.[5]  As such, Plaintiff's section 1681s-2(b) is not time-barred and

_____

[5] The Court notes that Plaintiff also alleges Defendant "was place [sic] on notice that information concerning Plaintiff's loan was in dispute as early as October 2000," and that Defendant failed to investigate this dispute until June 7, 2005.  Compl. at ¶ 75.  However, as explained above, the type of notice required to trigger the investigatory obligations of section 1681s-2(b) is notice *by a credit reporting agency*.  According to the Complaint, Plaintiff did not notify a credit reporting agency of his dispute until February 7, 2006.

is not subject to dismissal.

## C.   Punitive Damages Claim

In Count IV of his Complaint Plaintiff seeks, among other damages, punitive damages.  *See* Compl. at 12.  Punitive damages are available under the FCRA.  Section 1681n(a)(2) provides that "[a]ny person who willfully fails to comply with any requirement imposed under [section 1681] with respect to any consumer is liable to that consumer" for "such amount of punitive damages as the court may allow."

Defendant has moved to strike Plaintiff's request for punitive damages, claiming that  Plaintiff "fails to allege any willful noncompliance with the FCRA" on its part.  Def's Mot. to Dismiss at 7. Defendant insists that "willful" noncompliance in this context means "conscious disregard" of the consumer's rights or "deliberate and purposeful" noncompliance, citing to a District of Connecticut case.  *Id.*  However, the United States Supreme Court recently interpreted the term "willful" as used in section 1681n and made clear that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)."  *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2216 (2007); *see also id.* at 2208-11.  The Court elaborated that "a company subject to FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *Id.* at 2215.     H e r e , Plaintiff alleges that when Defendant learned from Equifax that Plaintiff disputed information Defendant furnished, sometime prior to March 8, 2006, Defendant "recklessly and without proper investigation" confirmed the account was reported correctly "when in fact [Defendant's] notification was inaccurate and contrary to the facts in [Defendant's] possession."  Compl. at ¶¶ 76-77.  This

allegation is bolstered by Plaintiff's allegation that only a few months later, Defendant sent Plaintiff a letter "advising that the loan was paid in full and that the credit reporting agencies were being notified accordingly and that there were no delinquencies on the account going back to October 2000." *Id.* at ¶ 76. Construing the pled facts in the light most favorable to Plaintiff, he has sufficiently alleged that in confirming clearly erroneous information without a proper investigation, Defendant acted recklessly and with more than mere carelessness. *See Safeco*, 127 S. Ct. at 2215. As such, his claim for punitive damages is not subject to dismissal at this time.

**D.      Lost Profits Claim**

In Count IV Plaintiff also seeks lost profits damages. *See Compl.* at 12. Defendant has moved to strike Plaintiff's request for lost profits damages, claiming that "losses on business investments do not constitute damages under the FCRA" and citing to an unpublished decision of the Northern District of Texas. *See* Def.'s Mot. to Dismiss at 7. Defendant states that "[Plaintiff's] alleged lost opportunities all involve business-related real estate transactions that [Plaintiff] supposedly could not accomplish due to his poor credit worthiness." *See id.* Plaintiff contends in his Response that he does not allege lost profits related to business ventures, but rather lost profits related to private investment opportunities. *See* Pl.'s Resp. at 5-6.

It is unnecessary for the Court to examine whether lost profits related to "business investments" are available under section 1681, or whether Plaintiff alleges lost profits related to business ventures or to private investments. This is because, as alleged in the Complaint, the lost profits damages that Defendant seeks to strike predate Defendant's alleged breach of section 1681s-2(b). Thus, they cannot form the basis for recovery under the FCRA.

There are only two instances of failed "real estate transactions" in Plaintiff's Complaint. The

10

first is where Plaintiff complains of making several attempts to purchase land in Ocala "without success due to his credit standing," until finally being successful in November 2004. *See* Compl. at ¶¶ 27-28. The second is where Plaintiff complains of being unable to purchase a "business condo" on two occasions, sometime before November 2004 and "on or about the end of May 2005." *See id.* at ¶¶ 28-29, 32. As explained above, the earliest possible date Defendant could have violated the investigatory requirements of section 1681s-2(b) after receiving the requisite notice from a consumer credit reporting agency is March 9, 2006. *See supra* at 6-9. Thus, any allegations pertaining to Plaintiff being unable to purchase land in Ocala in 2004 or a "business condo" in 2004 and 2005 are unrelated to Defendant's alleged breach of the FCRA, and cannot be the basis for recovery under that statute.

### IV. CONCLUSION

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (D.E. #5) is GRANTED IN PART AND DENIED IN PART. Counts I, II, and III of Plaintiff's Complaint, as well as his claim for lost profits related to events prior to March 9, 2006 are hereby DISMISSED. Count IV of Plaintiff's Complaint, as well as his claim for punitive damages, will go forward.

DONE AND ORDERED in Miami, Florida this 24th day of September, 2007.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record
Parasram Rambarran, Pro Se

11