UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-21798-CIV-HUCK/SIMONTON
<u>CONSENT CASE</u>

PARASRAM RAMBARRAN,

      Plaintiff,

v.

BANK OF AMERICA, N.A.,

      Defendant.

_____/

<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Presently pending before the Court is Defendant's Motion for Summary Judgment, Motion to Strike Plaintiff's Damages Claim, Motion to Preclude Plaintiff's Presentation of Trial Witnesses, and Motion to Strike Plaintiff's Demand for Trial by Jury (DE # 33). The motion for summary judgment is fully briefed (DE ## 48, 57, 86, 87)[1] and this case is referred to the undersigned Magistrate Judge based upon the consent of the parties (DE # 20). Based upon a thorough review of the record as a whole, and for the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED. All remaining requests for relief are DENIED AS MOOT.

I.      <u>BACKGROUND</u>

Under the Fair Credit Reporting Act ("FCRA"), Bank of America is a "furnisher of credit information" that is obligated to conduct an investigation into the accuracy and

---

[1] Plaintiff, a *pro se* litigant, filed an initial response in opposition to Defendant's motion for summary judgment (DE # 48), as well as a supplemental response (DE # 86) pursuant to this Court's Order (DE # 84). Defendant, in turn, replied to each brief separately (DE ## 57, 87). The undersigned further notes that both of Plaintiff's responses are incorrectly docketed as "Motion[s] to Deny the Defendant's Motion for Summary Judgment," though they will be treated as responses for the purposes of this Order.

completeness of the credit information it has provided to consumer reporting agencies ("CRAs") upon receiving proper notice from a CRA that a consumer has challenged an item in his credit report that was provided by the Bank.  15 U.S.C. § 1681s-2(b).  In the context of this case, Plaintiff alleges that he notified three CRAs – Experian, Trans Union and Equifax – that his credit report included a harmful "charged off" account that was incorrectly reported by Bank of America even though Plaintiff had settled that account years earlier; and, that after one or more of the CRAs notified Bank of America of Plaintiff's credit dispute, Bank of America was then obligated to conduct an investigation within 30 days to determine whether it was accurately reporting the charged off account. Plaintiff contends that the Bank failed to do this; that the incorrect information remained in his record for approximately three months until Bank of America finally corrected it; and that he is therefore entitled to actual or statutory damages, in addition to punitive damages and pre-judgment and post-judgment interest  (DE # 1).  Bank of America denies any wrongdoing and filed the instant motion for summary judgment, asserting that, after adequate time for discovery, Plaintiff has failed to produce a scintilla of evidence to support the elements of his claim that he will bear the burden of proving at trial (DE # 33).

Plaintiff filed his four-count *pro se* complaint on July 12, 2007, which Bank of America immediately moved to dismiss (DE # 5).  The District Judge assigned to this case entered an Order in which he noted that "Plaintiff invokes the FCRA . . . but does not specify which portion of that Act" is applicable to his claims (DE # 14 at 5).  Thus, the District Judge dismissed Counts I-III because they appeared to state a cause of action under 15 U.S.C. § 1681s-2(a), which does not provide for enforcement by individual consumers, like Plaintiff (DE # 14 at 5-6).

In contrast, the District Judge denied Bank of America's motion to dismiss Count IV, based on the fact that the FCRA provides a private right of action for violations of 15 U.S.C. § 1681s-2(b), which encompasses Plaintiff's allegation that the Bank failed to promptly investigate the information it furnished to the CRAs regarding Plaintiff's credit after receiving notice from the CRAs that Plaintiff disputed the accuracy of that information (DE # 14 at 6).

In his Order on Defendant's motion to dismiss, the District Judge noted two salient facts: First, Bank of America's duty to conduct an investigation pursuant to the FCRA is only triggered upon being notified of a dispute by a CRA directly; a complaint lodged by the consumer to the Bank will not suffice to trigger a duty to investigate under the statute (DE # 14 at 8 n.5).  Second, upon receiving such notice directly from a CRA, Bank of America "had thirty days to begin its investigation before being in breach" of the FCRA (DE # 14 at 8); 15 U.S.C. § 1681s-2(b)(2).  Thus, construing the allegations in the light most favorable to Plaintiff, the District Judge concluded that Bank of America cannot be liable for any damages for any act or omission committed prior to March 9, 2006, because Plaintiff first notified the CRAs that he disputed the charged off account on February 7, 2006, and, therefore, the earliest deadline for Bank of America to conduct an investigation expired 30 days later, on March 9, 2006 (DE # 14 at 8, 10-11).

Thereafter, pursuant to 28 U.S.C. § 636(c), this case was referred to the undersigned Magistrate Judge based upon the consent of the parties.  Bank of America subsequently filed the presently pending motion for summary judgment.  First, Bank of America contends that there is no evidence to support Plaintiff's assertion that it received notice directly from a CRA that Plaintiff disputed its reporting of his charged off account (DE # 33 at 9).  Second, Bank of America contends that the earliest it could have

3

possibly received notice directly from a CRA was February 7, 2006; and that there is no evidence that it breached any statutory duties within the time provided under the FCRA (DE # 33 at 8-9).  Third, Bank of America contends that there is no evidence that Plaintiff incurred any losses after March 9, 2006, the day that the Bank's 30-day deadline to conduct an investigation expired; and, therefore, there is no evidence to support the imposition of actual damages (DE # 33 at 8-10).  Finally, Bank of America contends that there is no evidence to support the imposition of statutory or punitive damages based on the Bank's willful noncompliance with the FCRA (DE # 33 at 10).[2]

II.    **LEGAL STANDARDS**

A.    **Summary Judgment**

Under the familiar standard of Federal Rule of Civil Procedure 56(c), summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  The movant has satisfied its burden of proof if, "after adequate time for discovery," the non-movant has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the motion is filed by a defendant and

---

[2]  Bank of America's motion also requests the following relief: First, it seeks to strike Plaintiff's damages claim based on a lack of evidence, as well as Plaintiff's waiver of consequential and punitive damages under the Note, Disclosure and Security Agreement pertaining to the loan that gave rise to alleged charged off account (DE # 33 at 10-11); second, it seeks to strike Plaintiff's demand for a jury trial based on the wavier contained in the Note, Disclosure and Security Agreement (DE # 33 at 12); and third,  it seeks to preclude Plaintiff's presentation of trial witnesses because Plaintiff failed to furnish a fact witness list (DE # 33 at 13).  Because this Order grants Bank of America's motion for summary judgment, these alternative requests for relief are denied as moot.

addresses the adequacy of plaintiff's causes of action, the defendant's "burden is not to produce evidence negating the existence of material facts; rather, the burden is to 'point out the absence of evidence supporting the nonmoving party's case.'" *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1274 (S.D. Fla. 2003) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)); *see also Hickson Corp. v. N. Crossarrm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).

Assuming the moving defendant has met its initial burden, the non-moving plaintiff "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). There must be a *genuine* factual dispute sufficient to permit a *reasonable* jury to return a verdict for the non-movant; and, "[f]or factual issues to be considered genuine, they must have a real basis in the record." *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993)). "For instance, mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). While the Court must view all of the evidence and any inferences arising therefrom in light most favorable to the non-movant, it is nevertheless insufficient for the non-movant "to state what the evidence at trial will demonstrate" without producing actual "evidence to refute the factual claims contained in the motion for summary judgment." *Schvaneveldt v. Mastec N. Am., Inc.*, 306 F. Supp. 2d 1177, 1181 (S.D. Fla. 2004) (citing *Hairston*, 9 F.3d at 918). Nor is the Court "required to 'scour the record to determine

whether there exists a genuine issue of material fact to preclude summary judgment.'"
*Cardinal Capital*, 401 F. Supp. 2d at 1282 n.5.

      B.    <u>The Fair Credit Reporting Act</u>

      As it relates to this case, the Fair Credit Reporting Act imposes certain duties upon Bank of America in its capacity as a furnisher of credit information.  First, in order to trigger a duty to act, Bank of America must "receive notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information" it provided to "a consumer reporting agency [['CRA')]"  15 U.S.C. § 1681s-2(b)(1).  Notice to a furnisher of credit information, such as Bank of America, is provided pursuant to section 1681i(a)(2) when a CRA, such as Experian, Trans Union or Equifax, reports that a customer, such as Plaintiff, has disputed an item of credit that the Bank provided to the CRA.  15 U.S.C. § 1681i(a)(2).

      After receiving such notice, the Bank is required to "conduct an investigation with respect to the disputed information;" and "review all relevant information provided" to it by the CRA.  15 U.S.C. § 1681s-2(b)(1).  Regardless of the results of its investigation, the Bank must report back to any CRA that notified it of the dispute.  15 U.S.C. § 1681s-2(b)(1)(C).  If the investigation results in a finding that the Bank provided incomplete or inaccurate information to the CRA, then it must report the results of its investigation to all other CRAs that received such incomplete or inaccurate information.  15 U.S.C. § 1681s-2(b)(1)(D).  Finally, if the investigation is either inconclusive or results in a finding that the Bank provided incomplete or inaccurate information to the CRA, then the Bank, "for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the investigation promptly modify that item of information; delete that item of information; or permanently block the reporting of that item of information."  15

U.S.C. § 1681s-2(b)(1)(E).  The Bank must complete its investigations, reviews and reports within the 30-day period after the consumer notifies the CRA of the dispute.  15 U.S.C. § 1681s-2(b)(2).[3]

A successful FCRA plaintiff is entitled to a damage award that varies depending on the willfulness of the breach.  Recovery for a negligent violation of the FCRA is limited to the amount of actual damages and attorneys' fees and costs.  15 U.S.C. § 1681o.  If the breach is willful, however, the plaintiff is entitled to recover either actual damages or statutory damages (from $100-$1,000), whichever is greater, in addition to attorneys fees and costs.  The Court may also impose punitive damages to punish a willful violation of the FCRA.  15 U.S.C. § 1681n.

III.    ANALYSIS[4]

Bank of America's motion for summary judgment is premised upon the lack of evidence to support the essential elements of Plaintiff's claims.  Thus, the undersigned notes at the outset that Plaintiff, throughout these proceedings, has insisted that Bank of America and the CRAs are willfully withholding documents necessary to support his case, a charge that Bank of America has vehemently denied.  In consideration of

---

[3]  The deadline may be extended up to 15 additional days if the consumer provides additional relevant information within the 30-day investigation period, 15 U.S.C. § 1681s-2(b)(2); 15 U.S.C. § 1681i(a)(1), but neither party has argued that the investigation period was extended in this case.

[4]  The undersigned notes that, buried within Plaintiff's response to Bank of America's statement of material facts not in dispute, Plaintiff claims that Bank of America is liable under the FCRA based on its alleged "failure to give proper notice to Plaintiff as is required by 15 U.S.C. [§] 1681s-2(b)" (RSOF 22, DE # 86 at 15).  This assertion is without merit because § 1681s-2(b) does not contain any notification requirement whatsoever.  This allegation simply appears to be a hold-over from Plaintiff's claims arising under § 1681s-2(a), which were dismissed by the District Judge (DE # 14).

7

Plaintiff's *pro se* status, this Court has granted Plaintiff liberal allowances to ensure that he was given an opportunity to marshal the necessary documents, including, for example, by allowing Plaintiff to conduct untimely discovery pertaining to the CRAs, even though Plaintiff initially resisted the Bank's efforts to obtain the same information (DE ## 31, 71); and by adjusting the time schedule to accommodate Plaintiff's request to conduct additional discovery and file a supplemental response in opposition to Bank of America's motion for summary judgment, even though Plaintiff initially insisted on an early trial date (DE # 63).

In addition, the undersigned explicitly encouraged Plaintiff to clarify the record by responding to Bank of America's Statement of Material Facts "on a paragraph by paragraph basis . . . stat[ing], for each of the [Bank's] numbered paragraphs, whether the facts alleged therein are disputed or undisputed" and by supporting any disputed facts with citations to the record (DE # 85).  Plaintiff failed to heed these instructions, instead responding to Bank of America's Statement of Material Facts with meandering explanations and citing to previous paragraphs in his own memorandum without indicating whether a given fact was disputed or undisputed (e.g., DE # 86 at 11-17, ¶¶ 9, 11, 19-21, 25).

A.    <u>Notice Under the Fair Credit Reporting Act</u>

The undersigned finds that the existence of a genuine issue of material fact precludes granting Bank of America's motion for summary judgment based on its contention that it did not receive notice from a CRA sufficient to trigger its obligation to conduct an FCRA investigation.[5]  As stated above, Plaintiff's cause of action against

_____

[5]  Bank of America has not refuted the allegation that Plaintiff informed the CRAs of his dispute on February 7, 2006 at the earliest.  This allegation is also supported by

Bank of America requires him to prove that the Bank failed to conduct an investigation into the dispute 30 days after receiving notice of a dispute directly from a CRA.  15 U.S.C. § 1681s-2(b).[6]  Whether the Bank received notice from any other source, such as Plaintiff, for example, is irrelevant for the purposes of satisfying the FCRA's notice requirement.  *See Peasley v. Verizon Wireless (VAW) LLC*, 364 F. Supp. 2d 1198, 1200 (S.D. Cal. 2005) ("Courts have consistently held that for the duty imposed by § 1681s-2(b) to be triggered, the furnisher of information must have received notice of the dispute from a consumer reporting agency, not from the consumer."); *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003) ("[A] furnisher of credit information, such as the Bank, has no responsibility to investigate a credit dispute until *after* it receives notice from a consumer reporting agency.  Under the statutory language, notification from a consumer is not enough.").

Although Bank of America argued in its motion for summary judgment that Plaintiff could not prove that it received notice from a CRA regarding Plaintiff's credit dispute (DE # 33 at 9), it never responded to Plaintiff's arguments to the contrary, even though it had the opportunity do so in both its initial reply (DE # 57) and in its

---

evidence in the record, including the Equifax Automated Consumer Dispute Verification Form ("ACDVF"), which was created on February 15, 2006 and reflects a response date of March 7, 2006 (DE # 67, Ex. F at 15); as well as the Trans Union ACDVF, which was received on February 10, 2006 and reflects a response date of March 7, 2006 (DE # 67, Ex. G at 17).  Based on the 30-day deadline for responding under the FCRA, these Forms support the conclusion that Plaintiff notified the CRAs of his dispute during the first week of February 2006.

[6]  Pursuant to 15 U.S.C. § 1681s-2(b), the Bank's duty to investigate is triggered "[a]fter receiving notice pursuant to section 1681i(a)(2)."  Section 1681i(a)(2) provides, in turn, that within five business of receiving "notice of a dispute from any consumer . . ., the [CRA] shall provide notification of the dispute to any person who provided any item of information in dispute."

supplemental reply (DE # 87).  Regardless of whether Bank of America intended to concede this point, there is sufficient evidence in the record to permit a reasonable factfinder to conclude that Bank of America received notice from a CRA in accordance with section 1681i(a)(2), which triggered its duty to investigate Plaintiff's credit dispute.

Specifically, Plaintiff has submitted a letter from Equifax, dated March 8, 2006, which accompanied its "results of [Plaintiff's] request for Equifax to reinvestigate certain elements of [his] credit file."  The letter states that Bank of America "has verified to Equifax that the current status" of the disputed account "is being reported correctly" and that Bank of America provided "additional information . . . regarding this item" (PX 2, DE # 86,  C1 at 3).[7]  The Automated Consumer Dispute Verification Form provided by Equifax correctly lists the Bank of America account as the disputed account (DE # 67, Ex. F at 15).

In addition, Trans Union produced an Automated Consumer Dispute Verification Form that it received on February 10, 2006 which reflects that Plaintiff disputed the "Curr[ent] Bal[ance] . . ., Sch[eduled] Monthly P[ayment] Am[ount], Act[ual] P[ayment] Am[ount], Am[ount] Past due, . . . and Orig[inal] Ch[argeoff] Am[ount]" on his Bank of America Account (DE # 67, Ex. G at 16); and, that a Bank of America employee verified the accuracy of the account, including the entry indicating that his loan was charged off

---

[7]  **Plaintiff has identified the exhibits to his response in a confusing manner.  He attached three composite exhibits, which each contain numerous documents that are marked with their own exhibit numbers.  Thus, Composite Exhibit 1 contains fifteen documents that are independently marked as Plaintiff's Exhibits 1-15.  Likewise, Composite Exhibit 2 contains four documents, which are marked as Plaintiff's Exhibits 16-20; and Composite Exhibit 3 consists of Plaintiff's Exhibits 21-37.  For purposes of this Order, the undersigned will refer to these records by first citing the Exhibit Number chosen by Plaintiff ("PX__"), and then by identifying the appropriate Docket Entry Number ("DE # 86"), the Composite Exhibit Number ("C1, C2 or C3") and, finally, the Page Number.**

**(DE # 67, Ex. G at 17).**

Thus, based on the correspondence from Equifax, as well as the Automated Consumer Dispute Verification Forms issued by Equifax and Trans Union, there is adequate evidence in the record to support an inference that Bank of America received notice of the dispute from a CRA.[8]

B.      Investigation and Reporting Under the Fair Credit Reporting Act

The undersigned also finds that there is a genuine issue of material fact as to whether Bank of America performed a "reasonable investigation" into Plaintiff's credit dispute after receiving notice from a CRA.  Although Bank of America asserts that it complied with all of its FCRA-mandated requirements, a reasonable factfinder could conclude otherwise and, therefore, summary judgment is not appropriate to resolve this question.

The record, when viewed in the light most favorable to Plaintiff, indicates that Bank of America had prior knowledge that Plaintiff's account was paid in full, and not charged off (PX 7, DE # 86, C1 at 11) (Bank of America letter dated October 20, 2000); (PX 4, DE # 86, C1 at 8) (Bank of America letter dated June 7, 2005).

Furthermore, for the reasons explained above, there is evidence indicating that Bank of America received notice from the CRAs regarding Plaintiff's dispute over the charged off account, and that Bank of America was therefore obligated under the FCRA to conduct an investigation into Plaintiff's charged off account by March 9, 2006 at the

---

[8]  Plaintiff also attached a letter from Experian to his response.  The Experian correspondence, dated February 17, 2006 reflects that it investigated Plaintiff's charged off account pursuant to his request.  But, the Experian letter, unlike the Equifax letter, does not expressly say that it notified Bank of America of the dispute, nor was it accompanied by an Automated Dispute Verification Form (PX 34, DE # 86, C3 at 39).

latest. *See* 15 U.S.C. § 1681i(a)(1); 15 U.S.C. § 1681s-2(b).

Nevertheless, viewing the evidence in the light most favorable to Plaintiff, Bank of America incorrectly verified the accuracy of the charged off account to the CRAs, which a factfinder could attribute to Bank of America's failure to conduct a reasonable investigation regarding the disputed account.  The undersigned finds Bank of America's argument to the contrary to be unpersuasive.  In short, Bank of America points out that Plaintiff's May 14, 2007 Trans Union credit report correctly shows the account to be paid in full and not charged off; and, therefore, Bank of America argues, it is necessary to assume that, because the reporting error was corrected on May 14, 2007, it was also correct prior to the March 9, 2006 deadline (DE # 57 at 3-4; DE # 87 at 2).  This argument is belied by the evidence in the record, which indicates that the erroneous charged off account remained in Plaintiff's credit reports after the March 9, 2006 deadline.

First, the Equifax Automated Consumer Dispute Verification Form shows that Plaintiff disputed the reporting of the charged off account in February 2006 (DE # 67, Ex. F at 15); yet, the documents produced by Equifax reflect the fact that Bank of America verified the charged off account on or before March 7, 2006 (DE # 67, Ex. F at 29); and, therefore, the charged off account remained in Equifax's records through at least March 8, 2006 (DE # 67, Ex. F).  It appears that it was not until May 2006, more than two months after the expiration of the deadline for Bank of America to conduct its investigation, that Equifax's records were updated to correctly report that the account was not charged off (DE # 67, Ex. E at 3; DE # 67, Ex. F at 18).[9]

---

[9] This May 2006 date appears both on an Equifax credit report issued on January 29, 2008, under the section that indicates the month and year of the last account update (DE # 67, Ex. E at 2-3); as well as on an unmarked document provided by Equifax, which was generated on May 9, 2007 (DE # 67, Ex. F at 18).  A factfinder could conclude that

Similarly, after Trans Union received notice that Plaintiff disputed the charged off account on February 10, 2006; and, thereafter, a Bank of America employee verified the charged off account (DE # 67 , Ex. G at 17).  Thus, the charged off account appears in subsequent credit reports issued by Trans Union on March 8, 2006 (DE # 67, Ex. G at 20) and March 9, 2006 (DE # 67, Ex. G at 32), which represent the day before and the day of Bank of America's deadline to investigate.  Trans Union produced documents suggesting that the erroneous charged off account was not corrected until June 2006 (DE # 67, Ex. G at 61);[10] and, the first corrected Trans Union credit report in the record was generated on May 9, 2007 (DE # 67, Ex. G at 51).

Assuming that Experian received notice of the charged off account in February 2006, at the same time as Equifax and Trans Union, the record reflects that Bank of America verified the charged off account, since it appears in Experian's February 17, 2006 credit report (DE # 67, Ex. H at 24), as well as in Experian's March 10, 2006 credit report (DE # 67, Ex. H at 40), one day after the deadline for Bank of America to complete its investigation.  And, consistent with the date that Equifax and Trans Union corrected their erroneous reporting of Plaintiff's charged off account (in May 2006 and June 2006,

---

Bank of America conducted a supplemental investigation on March 8, 2006 which corrected the error, and that this investigation would not be reflected in Equifax's records if Equifax made a subsequent modification to Plaintiff's account sometime in May 2006.  That Bank of America conducted a supplemental investigation on March 8, 2006, which corrected its initial verification of the charged off account, is neither a necessary conclusion to draw from the evidence, nor the most reasonable one.

[10]  Equifax's Account Column Title Descriptors states that the "Date Reported" entries reflect "The Month and Year of the Last Account Update" (e.g., DE # 67, Ex. E at 2).  The undersigned assumes that the same definition applies to the Trans Union documents that did not come with a glossary and, therefore, the entry entitled "Dt Repted" with a date of June 2006 reflects the most recent update that Trans Union made to Plaintiff's file in its system as of the date the document was generated (DE # 67, Ex. G at 61).

respectively), it appears that the correction was entered into Equifax's system on May 25, 2006, two months after the deadline expired (Ex. 67, Ex. H at 74).[11]

In sum, viewing the evidence in the light most favorable to Plaintiff, the CRAs notified Bank of America that Plaintiff disputed his charged off account on or about February 10, 2006; and yet, Bank of America erroneously verified the charged off account, which was not reported correctly by the CRAs until May 2006 at the earliest, more than two months after Bank of America's deadline for conducting an investigation into the accuracy of the charged off account had expired on March 9, 2006.

To be sure, Bank of America's failure to identify its error regarding Plaintiff's charged off account does not render its investigation unreasonable *per se*: An investigation that yields less-than-perfect results may nevertheless be reasonable given the facts of a particular case.  However, numerous courts have recognized that the reasonableness of an investigation is a matter to be determined at trial, not summary judgment, unless the facts of the case establish the reasonableness or unreasonableness of a particular investigation beyond all doubt.  *See King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1278 (N.D. Ga. 2006) ("[T]he reasonableness of the investigation is a factual question normally reserved for trial").  Simply stated, this is not such an open-and-shut case.  A genuine issue of material fact remains as to whether Bank of America's investigation was reasonable in light of the fact that it verified the existence of Plaintiff's charged off account to the CRAs (e.g., PX 2, DE # 86, C1 at 3), even though its own records reflected that Plaintiff's account was "paid in full" as of

---

[11] This May 25, 2006 date is reflected in an Experian credit report dated May 14, 2007, under the section that indicates the month and year of the last account update (DE # 67, Ex. H at 60), as well as an unmarked document that was generated on February 14, 2008 (DE # 67, Ex. H at 74).

October 20, 2000 (PX 7, DE # 86, C1 at 11), a fact it confirmed in a letter it sent to Plaintiff on June 7, 2005 (PX 4, DE # 86, C1 at 8).  *See Johnson v. MBNA Am. Bank*, 357 F.3d 426, 430 n.2, 430-31 (collecting cases in which "district courts . . . have consistently recognized that the creditor's investigation must be a reasonable one"; finding that "[i]t would make little sense to conclude that . . . Congress used the term 'investigation' to include superficial, *un*reasonable inquiries by creditors"; and holding that "§ 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a c[onsumer] reporting agency, to conduct a reasonable investigation of their records").

      C.    <u>Damages</u>

     To summarize, there is sufficient evidence to go to trial on the issue of whether Bank of America received notice of Plaintiff's credit dispute from a CRA pursuant to 15 U.S.C. § 1681i(a)(2), as well as on the issue of whether Bank of America conducted a "reasonable" investigation in accordance with the FCRA.  Thus, the undersigned turns to damages, the final element of Plaintiff's FCRA claim.

     For the reasons stated below, summary judgment is appropriate because, even assuming that Bank of America did not comply with the FCRA, Plaintiff has failed to present sufficient evidence that he was injured as a consequence of that alleged non-compliance.

     The earliest deadline for Bank of America to complete its FCRA-mandated investigation occurred on March 9, 2006; and, assuming the investigation unreasonably verified the existence of a charged off account, its error was corrected by May 25, 2006 (DE # 86 at 6) (Plaintiff stating, in his Response, that the charged off account "was corrected by the . . . Credit Reporting Agencies in May 2006"); (PX 5, DE # 86, C1 at 9) (letter from Bank of America dated May 25, 2006 stating that "[a]n update has been

submitted to the credit bureaus to  . . . show the following: **Remove charge off status and show paid as agreed**"); (DE # 67, Ex. E at 3) (January 29, 2008 Equifax credit report accurately reporting the account as "paid as agreed" and stating that the account was last updated in May 2006); (DE # 67 Ex. H at 60, 74) (May 14, 2007 Experian credit report accurately reporting the account as "paid" and the most recent account update occurring in May 2006; and, February 14, 2008 Experian document stating that the account was last updated on May 25, 2006).  Thus, in order for Plaintiff's damages to be recoverable under the FCRA, they must be tied to Bank of America's alleged breach of the FCRA that occurred no earlier than March 9, 2006 and no later than May 25, 2006.

It is well established that a plaintiff suing under the FCRA shoulders the burden of demonstrating the existence of damages resulting from an alleged FCRA violation; and, thus, the failure of an FCRA plaintiff "to produce evidence of damage resulting from a FCRA violation mandates summary judgment."  *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)).  Plaintiff in this case has not provided any evidence to support a verdict finding either (1) that Plaintiff suffered actual damages as a result of Bank of America's negligent violation of the FCRA;[12] or (2) that Plaintiff is entitled to statutory or punitive damages as a result of Bank of America's willful violation of the FCRA.

Plaintiff's Statement of Claim is the only document that sets forth the basis of the

---

[12]  The undersigned also notes that the evidence necessary to support these claims is likely within Plaintiff's possession, custody or control, meaning that Plaintiff's insistence that Bank of America and the CRAs have withheld discovery is not a primary concern in this context.

relief sought in this lawsuit, and his sworn contentions therein constitute the sole evidence of his injuries.  Because the Statement of Claim is arranged in a haphazard fashion, the undersigned construes his claims for damages to fall into the following categories that are recognized under the FCRA (PX 23, DE # 86, C3 at 15-16):

Plaintiff's first category of alleged damages relates to his purported inability to obtain credit due to Bank of America's failure to correct its reporting of the charged off account.  Plaintiff claims that his inability to get a loan precluded him from purchasing a business condominium for $90,000 in 2002.  According to Plaintiff, he was not able to buy the condominium until his charged off account was corrected in 2007, for a price of $230,000.  Therefore, Plaintiff argues that he is entitled to $302,507.62, which represents the increased price of the condominium plus additional interest amortized over a 30-year mortgage period.  He also demands compensation for an indeterminate amount of potential lost profit that he would have earned by renting out the condominium.[13] Relatedly, Plaintiff says that his inability to obtain credit prevented him from selling his business after he suffered two heart attacks that rendered him unable to work.  Plaintiff further states that his inability to obtain credit forced him to sell a one-third interest in his residence to his niece for $100,000 and, therefore, Plaintiff seeks an additional award of $100,000 plus interest (*id.*).

In his second category of damages, Plaintiff claims that he suffered additional monetary losses because was forced to pay excessively high interest rates on his "credit

---

[13] Plaintiff has separated his claim for lost profits relating to the business condominium into lost profits incurred between March 2006 and July 2, 2007 on the one hand, and lost profits incurred between August 1, 2007 until the end of the mortgage period on the other (PX 23, DE # 86, C3 at 15).  Plaintiff does not explain the basis for separating his claim for lost profits this way.

cards and other credit facilities" as a result of the charged off account in his credit report.  Plaintiff demands $20,000 to compensate him for having to pay these inflated interest rates (*id.*).

Plaintiff's third category of damages are emotional distress damages, and Plaintiff avers that they came about due to his inability to obtain credit due to the charged off account.[14]  First, Plaintiff says that he felt embarrassed when he was forced to fire his wife from his business because he could no longer afford to pay her $150 weekly salary; which forced her to return to school in order to become a substitute teacher; which, in turn, caused an "adverse reaction" among his friends and business associates, who questioned whether Plaintiff and his wife were divorced, among other things.  Second, Plaintiff claims that his inability to timely pay his mortgage, utilities and "other expenditures" caused him to "develop a bad image."  Third, Plaintiff asserts that the stress resulting from his credit problems caused him to have two heart attacks, which led Plaintiff's doctor to forbid him from returning to work.  Finally, Plaintiff adds that he received phone calls from Bank of America in May 2006 demanding payment on the charged off account; and, he claims that these allegedly harassing phone calls caused him further anxiety and distress (*id.*).  Plaintiff does not assign a dollar value to these emotional distress damages.

    1.    <u>Actual Damages – Denial of or Loss of Opportunity to Obtain Credit</u>

As the District Judge stated in his Order on Bank of America's Motion to Dismiss,

> It is unnecessary for the Court to examine whether lost profits related to "business investments" are available under section 1681, or whether Plaintiff alleges lost profits related to business ventures or to private investments.

---

[14]  Plaintiff's emotional distress damages are incorrectly identified as "Punitive Damages" in his Statement of Claim (PX 23, DE # 86, C3 at 15-16).

This is because, as alleged in the Complaint, the lost profits damages that Defendant seeks to strike predate Defendant's alleged breach of section 1681s-2(b).  Thus, they cannot form the basis for recovery under the FCRA (DE # 14 at 10).

Plaintiff admits in his Response to Bank of America's Statement of Material Facts,[15] as well as in the Joint Pretrial Stipulation,[16] that the damages he claims in relation to his alleged inability to purchase a business condominium occurred prior to March 9, 2006, the first day that Bank of America could have possibly breached any duty under the FCRA as it relates to this case (RSOF 1, DE # 86 at 7) ("Plaintiff agrees that the financial opportunity referred to predates March 9, 2006"); (JPS 1, DE # 62 at 2) ("Plaintiff has not lost any financial opportunities after March 9, 2006."); (JPS 2, DE # 62 at 2) ("Plaintiff agrees that the alleged cause of his purported damages predates March 9, 2006.").  The evidence in the record is consistent with these admissions; and, therefore, the allegedly inaccurate reporting of his charged off account could not possibly affect his failure to obtain the credit necessary to purchase the business condominium, whether those damages are characterized in the Statement of Claim as "increased costs" on the one hand or "lost profits" on the other.  *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1161 (11th Cir. 1991); *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608 (7th Cir. 2005) ("Without a causal relation between the violation of the statute and a loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages.") (internal quotation marks omitted).

---

[15]  Hereafter, the undersigned shall refer to the Statement of Material Facts in Support of Bank of America's Motion For Summary Judgment as "SOF," and she shall refer to Plaintiff's response thereto as "RSOF."

[16]  Hereafter, the undersigned shall refer to the parties' Joint Pretrial Stipulations as "JPS."

19

Plaintiff's only argument to the contrary is that his claim for lost profits survives summary judgment because the *effects* of Bank of America's conduct that occurred prior to March 9, 2008 persisted, and caused him to suffer injuries after March 9, 2006. Plaintiff's analysis is not persuasive.  The question is not whether Plaintiff suffered any injury after March 9, 2006; the question is whether the *conduct* alleged to have caused those losses occurred after March 9, 2006.  Simply stated, all of the events giving rise to Plaintiff's alleged losses occurred prior to March 9, 2006 and are, therefore, not recoverable, even though he claims that he continued to feel the effects after March 9, 2006 (JSOF 15, DE # 62 at 4-5).  There is no dispute that, after his initial unsuccessful attempts to purchase the condominium in 2004 and 2005, Plaintiff did not make any further efforts to purchase it until he finally successfully purchased it in July 2007 (JPS 8-9, DE # 62 at 3) ("Plaintiff has not been denied any loan [or credit application] for which he has applied since March 9, 2006.").

Plaintiff suggests that he would have applied for credit after March 9, 2006, but decided not to do so out of a concern that a rejected credit application would further harm his credit rating.  This measure of damages is too speculative to withstand summary judgment.  *See Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995) (affirming summary judgment in favor of the defendant on the grounds that the plaintiff's "'lost opportunity' damages . . . were too speculative," despite evidence indicating that the plaintiff was "actively seeking to purchase a home" but "refrained from making any credit applications in order not to tarnish further his credit history").

2.    **Actual Damages – Excessive Interest Rates and the Sale of a One-Third Interest in His Residence**

In addition to the damages that Plaintiff claims relating to his inability to obtain credit necessary to purchase property for his business, Plaintiff also contends that Bank of America should compensate him based on the fact that the charged off account caused lenders to charge him excessive interest and placed Plaintiff in financial straits that required him to sell a one-third interest in his residence because he could not pay his mortgage.  Bank of America argues, and the undersigned agrees, that the evidence in the record could not support a verdict that Bank of America's alleged breach of the FCRA caused these injuries.

First, Plaintiff offers no more than his bald assertion that he provided "evidence of high interest rates on credit cards [i]n his name."  Bank of America has challenged this contention, and Plaintiff is unable to point to any evidence in the record to sustain his position (SOF 10-11, DE # 33 at 4); (RSOF 10, DE # 86 at 11).  Indeed, Plaintiff admits that he did not apply for any credit facility after March 9, 2006 (JPS 3, DE # 62 at 3) ("Plaintiff agrees that he has not made a single application for a credit facility after March 9, 2006").  Nor is there any basis in the record to presume that any lender altered Plaintiff's interest rate on an existing credit facility after that date.  At trial, for example, Plaintiff would have to come forward with evidence to show that his creditors relied on the erroneous credit reports when they decided to charge him high rates of interest.  *See Caltabiano v. BSB Bank & Trust Co.*, 387 F. Supp. 2d 135, 141 (E.D.N.Y. 2005) ("Plaintiff has not provided sufficient evidence in support of his claim" that he was forced to pay "a higher interest rate on his loan" as a consequence of the defendant-bank's alleged breach of the FCRA, where the evidence suggested that plaintiff's "interest rate was

higher because of interest rate market fluctuation and not his credit report.").[17]  There is no indication in the record that any creditor relied on its knowledge of Plaintiff's charged off account in deciding to set his interest rates at a particular level.  Because a factfinder would have to engage in impermissible speculation in order for Plaintiff to recover these damages, they cannot withstand summary judgment.

Similarly, Plaintiff has not sufficiently explained or provided evidence to demonstrate how losing a portion of his ownership stake in his home was in any way related to Bank of America's alleged non-compliance with its FCRA obligations.  As stated above, the evidence fails to support an inference that Plaintiff's ability to obtain credit was affected as a result of Bank of America's alleged breach of the FCRA.  Simply put, Plaintiff never attempted to obtain credit after March 9, 2006 and, therefore, Plaintiff's claim that Bank of America impaired his ability to obtain the capital he needed to pay his mortgage is too speculative to survive summary judgment.  Nor is there a causal link between the alleged FCRA violation at issue in this case and Plaintiff's claim that he could not pay his mortgage.  Plaintiff's Statement of Claim "refers  only to alleged losses prior to March 9, 2006" (SOF 13, DE # 33 at 4); and Plaintiff's "claim for damages is fully premised upon events which occurred prior to March 9, 2006" (SOF 24, DE # 33 at 6).  Plaintiff has not provided any evidence to rebut these facts, such as the vital details of the transfer, including the date that the transfer occurred.  For instance, in order for the transfer to possibly have been a result of Bank of America's failure to comply with the FCRA, it must have occurred after March 9, 2006.  A factfinder in this

---

[17]  In this regard, the undersigned notes that Plaintiff has also admitted that his May 2007 credit reports reflect the existence of negative credit information other than the disputed charged off account, which would presumably affect the interest rates set by lenders issuing capital to Plaintiff (JPS 11-12, DE # 62 at 4).

case, however, would not be permitted to make assumptions concerning this timeline without a basis in the record for doing so.

In sum, after scouring the record to find specific evidence to support Plaintiff's case, which this Court is not required to do, *Compania de Elaborados de Café v. Cardinal Capital Mgmt., Inc.*, 401 F. Supp. 2d 1270, 1274 (S.D. Fla. 2003), the undersigned was not able to find any proof of Plaintiff's claim that he was required to pay high interest rates on his credit cards or on any other credit facilities at *any* time, before or after March 9, 2006.  Nor was the undersigned able to find any proof that Plaintiff's decision to sell an ownership stake in his residence was related to Bank of America's purported FCRA violation.  *See Jackson v. Equifax Servs., LLC*, 167 Fed. Appx. 144, 146-47 (11th Cir. 2006) ("Although [plaintiff] alleged that he was denied credit, the evidence he offered did not support an inference that allegedly inaccurate information contained in his [credit] report caused the denial of credit.  Accordingly, we affirm the district court's grant of summary judgment."); *Acton v. Bank One Corp.*, 293 F. Supp. 2d 1092, 1101 (D. Ariz. 2003) ("Plaintiff has provided the Court with no specific information concerning these alleged injuries, and it is not the Court's duty to search the record for evidence on which to deny summary judgment. . . .  Because Plaintiff has failed to support his generalized allegations of damages with specific evidence, they will be eliminated by summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 1548, 91 L.Ed.2d 265 (1986)).

   3.   <u>Actual Damages – Emotional Distress Damages</u>

Plaintiff has not provided enough evidence of emotional distress damages to withstand summary judgment.  First, Plaintiff stipulated that he is not entitled to recover emotional distress damages.  Second, Plaintiff's stipulation of the applicable legal

authority is consistent with the law of this Circuit as well as other jurisdictions.  Third, the evidence in the record fails to meet that legal standard.  Finally, Plaintiff's alleged emotional distress damages resulted from the strain associated with monetary losses that could not possibly be caused by Bank of America's alleged breach of the FCRA.

a.   **Plaintiff's Stipulation That He Is Not Entitled To Emotional Distress Damages**

In the Statement of Claim, Plaintiff's demand for actual damages includes monetary losses as well as emotional distress damages, which he incorrectly labels "Punitive Damages" in his court papers.  Nevertheless, in the Joint Pretrial Stipulation, Plaintiff expressly states that he

> is not entitled to damages for any alleged emotional distress resulting from an alleged violation of the FCRA, where (1) Plaintiff provides only self-serving and conclusory statements about [his] emotional distress, (2) Plaintiff did not seek medical or psychological treatment for emotional distress, and (3) Plaintiff fails to explain his alleged emotional injury in detail.  *Bagby v. Experian Information Solutions, Inc.*, 162 Fed. Appx. 600 (7th Cir. 2006)

(JPS 5, DE # 62 at 8).  While the Court is not bound to the parties' stipulation of applicable law, *see Noel Shows, Inc. v. United States*, 721 F.2d 327, 330 (11th Cir. 1983), the Court is not required to manufacture a conflict where none exists, nor does Plaintiff's *pro se* status give this Court license to serve as his counsel or force him to revive points that he has explicitly conceded.  *See Fry v. Hillsborough County School Bd., Fla.*, 190 Fed. Appx. 810, 817 (11th Cir. 2006).  Absent controlling precedent to the contrary, the undersigned will honor the parties' stipulation that Plaintiff has failed to establish emotional distress damages in this case because Plaintiff provided only conclusory and self-serving statements regarding his alleged emotional distress; Plaintiff did not seek treatment for his alleged emotional distress; and Plaintiff failed to explain his alleged emotional distress in detail.

24

b.      **Plaintiff's Stipulation Is Consistent With Legal Precedent**

An independent review of relevant legal authorities reveals that the parties' stipulation regarding emotional distress damages is consistent with the case law of this Circuit and other Circuits.

The undersigned begins by recognizing that, in *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1281 (N.D. Ga. 2006), another Court in this Circuit permitted an FCRA claim to proceed to trial even though the only evidence of emotional distress damages was based solely on the plaintiff's own testimony.  This precedent is not persuasive, however, for the reasons that follow.  First, the Court in *King* relied on *Moore v. Equifax Info. Servs. LLC*, 333 F. Supp. 2d 1360, 1365 & n.3 (N.D. Ga. 2006), for the proposition that "a plaintiff is not required to produce evidence of emotional distress beyond his own testimony."  *King*, 452 F. Supp. 2d at 1281.  Two other courts faced with the same question since *Moore* was decided, however, have come out the other way and required more than an FCRA plaintiff's own testimony to support a claim for emotional distress damages.  *See Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 WL 2095092, at *5 (S.D. Ga. Aug. 29, 2005) (collecting cases and concluding that an FCRA plaintiff "must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress"); *Jordan v. Trans Union LLC*, No. 1:05 CV 305 GET, 2006 WL 1663324, at *7-8 (N.D. Ga. June 12, 2006) (holding, in a case arising under the FCRA, that "[t]he remainder of plaintiff's complaints such as feeling frustrated and degraded are insufficient, standing alone, to support damages for mental anguish.").  In addition, *Moore* provides dubious support for the conclusion reached in *King*, because the plaintiff in *Moore* did not rely exclusively on his own testimony of emotional distress damages to withstand

summary judgment, as there was evidence of actual monetary damage based on "Equifax's publication of the inaccurate bad check report in plaintiff's credit file, [which caused] a lender [to] require[ ] plaintiff to pay a higher interest rate on his mortgage loan than he would have otherwise." *Moore*, 333 F. Supp. 2d at 1365.  Finally, in *Moore*, unlike the instant case, the emotional distress damages were found to arise from an identifiable instance where the plaintiff was humiliated when incorrect credit information was published to a third party.  *Id.*  Here, Plaintiff's claim for emotional distress damages is not tied to a discrete breach of the FCRA.  In sum, it is Plaintiff's burden to prove that he was injured as a result of an FCRA violation that occurred after March 9, 2006, and Plaintiff's recitation of distressing economic hardships that he experienced over an eight year period are too vague, too conclusory and too imprecise to meet that burden.

Moreover, the notion that an FCRA plaintiff's "testimony of emotional distress must be coupled with additional evidence [of] . . . some kind of actual or genuine injury" is consistent with the standard adopted by other courts facing this question.  James Lockhart, Annotation, *Remedies Available in Private Action Under §§ 616 and 617 (15 U.S.C.A. §§ 1681n, 1681o) of Fair Credit Reporting Act — Other than Attorney's Fees*, 20 A.L.R. Fed. 2d 509, at § 21 (2007) (collecting cases, including *Cousin v. Trans Union Corp.*, 246 F.3d 359 (5th Cir. 2001), and district court cases from the Second, Fifth, Sixth, Eighth, Ninth and Eleventh Circuits); *accord Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) ("Where . . . the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.") (internal quotation marks omitted);

26

*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 503 (4th Cir. 2007) (holding, in a FCRA case, that plaintiffs may not rely on mere "'conclusory statements'"; rather, they must "'sufficiently articulate[ ]' true 'demonstrable emotional distress," including "the factual context in which the emotional distress arose; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; the degree of such mental distress; mitigating circumstances, if any; physical injuries suffered due to the emotional distress; medical attention resulting from the emotional duress; psychiatric or psychological treatment; and the loss of income, if any.").

c.      **The Evidence Provided By Plaintiff Is Insufficient To Withstand Summary Judgment**

Based on these legal standards, Plaintiff's allegations regarding emotional distress damages are arguably sufficient to survive a motion to dismiss, but patently inadequate to survive a motion for summary judgment.  It is Plaintiff's burden to specifically demonstrate how his purported losses were caused by Bank of America's alleged FCRA violation that occurred between March 9, 2006 and May 25, 2006.  Bank of America asked Plaintiff to provide "[c]opies of any and all documents that support or tend to support [Plaintiff's] claim for damages;" and, Plaintiff failed to follow through on his promise to provide such documents.  Thus, the only evidence at all of Plaintiff's emotional distress damages consist of the conclusory assertions he made in his sworn Statement of Claim (SOF 12, DE # 33 at 4).

Though the Court made it clear early in these proceedings that Bank of America could not be liable for any damages arising before March 9, 2006, Plaintiff has steadfastly insisted on lumping all of his damages claims together, dating back to October 2000 (*see, e.g.,* RSOF 4, DE # 86 at 9) ("Plaintiff ought to be able to claim for all

27

the damages from [Bank of America] as outlined in his Statement of Claim . . . because [Plaintiff's] creditability was already damaged as far back as 2000").  Plaintiff was well aware that his emotional damages claims required additional factual support in order to withstand summary judgment, and yet he failed to provide any corroborating evidence whatsoever.  *See* (SOF 12, DE # 33 at 4) ("Plaintiff has produced only his March 12, 2008 'Statement of Claim' (and attached documents) in support of his alleged claim for damages"); (DE # 57 at 4) ("Plaintiff has sworn that his 'Statement of Claim' . . . completely sets forth his alleged claim for damages."); (DE # 85) (Court's Notice of Consideration of Motion for Summary Judgement).  A factfinder would have to engage in impermissible speculation in order to create a causal link between Plaintiff's alleged emotional distress injuries – which occurred over an eight-year period – and Bank of America's alleged failure to properly investigate its reporting of a charged off account – which occurred over a three-month period.  *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001) (holding, in the context of the FCRA, that a claim for "emotional distress must be supported by evidence of genuine injury . . . requir[ing] 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award.'").

      d.    **Plaintiff's Substantial Emotional Distress Damages Do Not Withstand Summary Judgment Because They Require Proof Of Actual Monetary Losses**

The bulk of Plaintiff's emotional distress damages rely on his claim that he suffered monetary losses; and, for the reasons discussed above, none of those monetary losses could have been caused by Bank of America's alleged FCRA violation. Plaintiff's Statement of Claim demonstrates that his emotional distress damages are only indirectly related to Bank of America's conduct, in that Bank of America's alleged

error precluded him from obtaining credit and his inability to obtain credit, in turn, gave

rise to his financial problems and the symptoms that he attributes to emotional distress

(*see, e.g.,* PX 23, DE # 86, C3 at 15-16) ("Plaintiff's inability to pay expenses on time . . .

caused Plaintiff to develop a bad image.") ("The problems arising out of [P]laintiff's

predicament of not being able to secure credit facilities to pay for the maintenance of his

home and family resulted in tremendous stress which affected his health . . . ."). If Bank

of America is not liable for any actual pecuniary losses, as set forth above, then, *a*

*fortiori*, it cannot be liable for the emotional distress resulting from those monetary

losses.

Therefore, even if Plaintiff's emotional distress damages were not inadequate as a

matter of law for the reasons stated above, the only possible freestanding claim that

remains for consideration concerns the emotional distress damages associated with two

telephone calls Bank of America allegedly made to Plaintiff in May 2006, in which it

sought payment on the erroneously reported charged off account. These phone calls,

however, would not create a genuine issue of material fact for trial because "the court

does not believe the frustration experienced by an unsolicited telephone call is the type

of emotional distress envisioned by the FCRA's definition of actual damages." *Thomas*

*v. Gulf Coast Servs., Inc.*, 214 F. Supp. 2d 1228, 1235 n.8 (M.D. Ala. 2002) (citing *Cousin*

*v. Trans Union Corp.*, 246 F.3d 359, 369 (5th Cir. 2001)).

4.    Statutory and Punitive Damages – Willful Breach of the FCRA

Even in the absence of proof of actual damages, Bank of America may still be

liable because "[a]ctual damages are not a statutory prerequisite to punitive damages"

under the FCRA. *Riley v. Equifax Credit Info. Servs.*, 194 F. Supp. 2d 1239, 1245 (S.D.

Ala. 2002) (quoting *Northrop v. Hoffman of Simsbury, Inc.*, 12 Fed. Appx. 44, 50 (2d Cir.

2001); *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967, 972 (4th Cir. 1987)). In other words, if Plaintiff can show that Bank of America "willfully fail[ed] to comply with any requirement imposed under" the FCRA, he is entitled to recover statutory damages between $100 and $1,000, in addition to attorneys' fees and costs and "such amount of punitive damages as the court may allow." 15 U.S.C. § 1681n. The undersigned finds, as a matter of law, that there are no facts to support a finding that Bank of America acted willfully, as opposed to negligently, with regard to any possible alleged FCRA violation.

The United States Supreme Court has counseled that the definition of "willful conduct" under the FCRA reaches reckless FCRA violations as well. *Safeco Ins. Co. of Am., v. GEICO General Ins. Co.*, 127 S.Ct. 2201, 2208 (2007). Thus, even absent proof of an "evil motive," it is well established that statutory and punitive damages may be warranted under section 1681n where an FCRA entity institutes a policy or performs an action in "reckless disregard" of a consumer's rights under the FCRA. *See Apodaca v. Discover Financial Servs.*, 417 F. Supp. 2d 1220, 1228 (D.N.M. 2006) (citing *Cushman v. Trans Union Corp.*, 115 F.3d 220, 227 (3d Cir. 1997); *Reynolds v. Hartford Financial Servs. Group, Inc.*, 435 F.3d 1081, 1098-99 (9th Cir. 2006)). Plaintiff bears the burden of establishing that Bank of America committed a "willful" or "reckless" violation of the FCRA. *See Bernal v. Am. Money Ctrs., Inc.*, No. 05-CV-1327, 2007 WL 2288066, at *7 (E.D. Wisc. Aug. 6, 2007). Based on the evidence provided by Plaintiff, a factfinder could not reasonably infer that Bank of America's mistaken verification of Plaintiff's charged off account was willful or reckless, as opposed to merely negligent; and, therefore, Bank of America is entitled to summary judgment.

Once again, Plaintiff's stipulation, which is consistent with applicable law, is fatal

30

to his claim that Bank of America committed a willful FCRA violation.  Plaintiff concedes that:

> A plaintiff[ ] who alleges erroneous reporting of disputed information[ ] fails to demonstrate willful and negligent violations of the FCRA, as required to maintain a private right of action, if he fails to present any evidence, beyond his belief at deposition, . . . that [the] furnisher's investigation was unreasonable.  *Gorman v. Wolpoff & Abramson, LLP*, 435 F. Supp. 2d 1004 (N.D. Cal. 2006)

(JPS 8, DE # 62 at 9)

Even if the Court were to disregard this stipulation, Plaintiff's claim for statutory and punitive damages fail as a matter of law for the reasons stated below.  Construing the record in the light most favorable to the Plaintiff reveals the following facts:

Initially, Bank of America acknowledged that Plaintiff had satisfied his loan obligations on October 20, 2000, and confirmed that his account "is paid in full" (PX 7, DE # 86, C1 at 11).  On September 17, 2001, however, Plaintiff received a letter from Bank of America which informed him that his account "was paid;" but, added that it "notified the appropriate credit bureaus to update this account to read paid charge-off on [Plaintiff's] credit profile" (PX 3, DE # 86, C1 at 7).[18]  After Plaintiff encountered difficulty obtaining credit, he complained to Bank of America, which issued another letter on June 7, 2005, in which it "confirm[ed] that Automated Update Forms have been sent to the [CRAs] advising them to report a zero balance on this account as of October 20, 2000. The account was paid in full on October 20, 2000" (PX 4, DE # 86, C1 at 8).  Despite

---

[18]  In the Complaint, Plaintiff alleges that he communicated sporadically with Bank of America between November 2004 and April 2005, but he did not provide any evidence to support these allegations.  Even if these allegations were supported by competent record evidence – which they are not –, they would not change the analysis because it is apparent from the Complaint that Plaintiff did not contact Bank of America for the purpose of disputing the charged off account, but rather for the purpose of attempting to obtain further loans (DE # 1 at 4-5, ¶¶ 17-25).

31

having acknowledged that Plaintiff's account was paid in full on two occasions – on October 20, 2000 and on June 7, 2005 – on or before March 8, 2006, Bank of America responded to the CRAs' notice of Plaintiff's credit dispute by erroneously verifying the existence of a charged off account.  Plaintiff implicitly contends that this mistake must have been the result of Bank of America's willful or reckless derogation of its obligation to conduct a reasonable investigation under the FCRA.  There is nothing in the record regarding any events which occurred with respect to this account until May 25, 2006, when, approximately three months after it was required to complete its FCRA investigation, Bank of America sent Plaintiff another letter stating that it has "requested that each [CRA] to whom [it] report[s] (TransUnion, Experian and Equifax) update your credit file as follows: . . . **Remove charge off status and show paid as agreed**" (PX 5, DE # 86, C1 at 9).  Plaintiff has not provided any evidence to contradict Bank of America's evidence that it notified the CRAs on this date, and in fact, this is corroborated by the evidence in the record provided by the CRAs (DE # 67, Exs. E-H).[19] The next credit report in the record was issued on May 12, 2007, and it did not include the charged off account, reflecting that the status of the account was "paid or paying as agreed" (PX 16, DE # 86, C2 at 2).  The remaining credit report, issued on May 14, 2008, similarly lists the status of the account as "Paid, Closed/Never Late" (PX 17, DE # 86, C 2 at 20).

There is no support in this record for Plaintiff's assertion that Bank of America

---

[19]  There is no evidence in the record to explain what prompted Bank of America to advise the CRAs on May 25, 2006 that the account was paid as agreed.  The undersigned notes, however, that in construing the facts most favorably to Plaintiff, she has <u>assumed</u> the accuracy of the CRAs' letter that Bank of America had verified the incorrect information on or before March 8, 2006.

acted willfully or recklessly, as opposed to negligently, in failing to carry out any obligation under the FCRA by, for example, (1) committing an FCRA violation that amounts to "more than 'an isolated instance of human error which [was] promptly cure[d]";[20] (2) engaging in misrepresentation or concealment;[21] or (3) failing to follow its own FCRA reinvestigation procedures.[22]  *See generally Cousin v. Trans Union Corp.*, 246 F.3d 359, 374-75 (5th Cir. 2001) (finding insufficient proof of willfulness based on an FCRA furnisher's re-reporting of adverse information to a CRA).  Because Plaintiff has not provided any proof to support an inference that Bank of America was reckless or willful, there is no basis for imposing statutory or punitive damages; and, in the absence of damages, summary judgment must be granted in Bank of America's favor.

The undersigned notes that this case bears only a superficial resemblance to *Schaffhausen v. Bank of America, N.A.*, 393 F. Supp. 2d 853 (D. Minn 2005), a case that offers helpful guidance by way of juxtaposition.  In that case, plaintiff's FCRA allegations

---

[20]  *See Evantash v. G.E. Capital Mortgage Servs., Inc.*, No. Civ.A. 02-CV-1188, 2003 WL 22844198, at *8 (E.D. Pa. Nov. 25, 2003) (quoting *Sheffer v. Experian Info. Solutions, Inc.*, No. Civ.A. 02-7407, 2003 WL 21710573, at *3 (E.D. Pa. July 24, 2003) and *Boris v. Choicepoint Servs., Inc.*, 249 F. Supp. 3d 851, 862 (W.D. Ky. 2003)).

[21]  *See Thomas v. Gulf Coast Credit Services, Inc.*, 214 F. Supp. 2d 1228, 1238-39 (M.D. Ala. 2002); *Kronstedt v. Equifax*, No. 01-C-0052-C, 2001 WL 34124783, at *19 (W.D. Wis. Dec. 14, 2001) ("At most, plaintiff has produced evidence showing that [defendant] had inadequate procedures in place to ensure that its credit inquiry department was informed that an account was under investigation by another department.  Because there is no evidence in the record to suggest that [defendant] intentionally misrepresented the status of the disputed account, plaintiff's punitive damages claim must be dismissed.").

[22]  *See Gohman v. Equifax Info. Servs., LLC*, 395 F. Supp. 2d 822, 828 (D. Minn. 2005) ("[Plaintiff] has made no showing that [defendant] did not follow its usual procedure[; or] how [defendant] knew that such actions may be unlawful or intentionally committed those acts[; and, f]or those reasons, plaintiff has failed to show that [defendant] willfully violated FCRA.").

survived summary judgment on all fronts, including his claim for punitive damages against a bank, based on its willful failure to comply with the FCRA after it issued "inconsistent response[s] in the face of numerous requests . . . and inquiries" to remove mention of an incorrectly reported charged off account.  The crucial fact that distinguishes the two cases is that the plaintiff in *Schaffhausen* reported his credit dispute to the CRA *immediately* after realizing the error in December 1999, which triggered the Bank's obligation to act.  Accordingly, the Bank's inconsistent responses and failure to correct its inaccurate reporting between January 2000 and April 2003 gave rise to a permissible inference that it was acting willfully or recklessly.

As in *Schaffhausen*, Plaintiff here alleges that he struggled for years – beginning as early as October 2000 –  to get Bank of America to stop reporting this account has charged off.  But, unlike the plaintiff in *Schaffhausen*, the Plaintiff here delayed contacting the CRAs until February 2006, which means that Bank of America's obligation to act was not triggered until March 2006; and, consequently, Bank of America's conduct in the interim is not reviewable under the FCRA.  During the time that the FCRA imposed any obligations upon Bank of America, the record at most supports a finding that the Bank committed only a single reporting error, and that the error was promptly corrected. Without any evidence pertaining to the cause of the error, no reasonable factfinder could conclude that Bank of America acted with a willful or reckless disregard of Plaintiff's rights.

IV.   <u>CONCLUSION</u>

In sum, Plaintiff has provided sufficient evidence to create a genuine issue of material fact with regard to two of the three elements of his FCRA claim: namely, whether Bank of America received notice from a CRA sufficient to trigger a duty to

investigate under the FCRA, and whether the Bank of America's FCRA investigation was reasonable.  However, Plaintiff was required to provide evidence sufficient to permit a reasonable factfinder to conclude either (1) that he suffered actual damages as a result of Bank of America's negligent violation of the FCRA; or (2) that he is entitled to statutory and punitive damages as a result of Bank of America's willful or reckless violation of the FCRA.  There is no evidence that Bank of America's alleged conduct caused Plaintiff to incur actual damages, nor is there any evidence that Bank of America acted willfully or recklessly with regard to its investigation of Plaintiff's credit dispute.  It is, accordingly,

**ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment, Motion to Strike Plaintiff's Damages Claim, Motion to Preclude Plaintiff's Presentation of Trial Witnesses and Motion to Strike Plaintiff's Demand for Trial by Jury (DE # 33) is **GRANTED, IN PART**.  Summary judgment is entered in favor of Defendant, and all remaining requests for relief are **DENIED AS MOOT**.

**DONE AND ORDERED** in chambers in Miami, Florida on March 13, 2009

_Andrea M. Simonton_
**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

Copies to:
All counsel and *pro se* parties of record